Gamma Law, P.C.
Duy Thai, SBN 157345
Email: dthai@gammalaw.com
Marco Martemucci, SBN 287397
Email: mmartemucci@gammalaw.com
One Sansome Street, Suite 3500
San Francisco, California 94104
Tel.: 415.296.9927
Fax: 415.901.0512

Attorneys for Applicants
Starto Entertainment, Inc. and Sho Sakurai

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>Starto Entertainment, Inc. and Sho Sakurai<br><br>Applicants. | Case No.:<br><br>***EX PARTE* APPLICATION OF STARTO ENTERTAINMENT, INC. AND SHO SAKURAI FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS;**<br><br>**AND**<br><br>**SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |

*Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782

## *EX PARTE* APPLICATION

Applicants Starto Entertainment, Inc., a Japanese corporation ("Starto") and Sho Sakurai, a Japanese citizen (collectively "Applicants"), hereby makes this *ex parte* application for an order pursuant to 28 U.S.C. § 1782 authorizing discovery for use in foreign proceedings ("Application"). This Application seeks limited discovery from Meta Platforms, Inc. ("Meta") and is supported by the supporting memorandum below and the Declaration of Hiroyuki Nakajima filed concurrently herewith. A proposed subpoena to be served is attached to this Application as **Exhibit A.**

## SUPPORTING MEMORANDUM

## I. BACKGROUND

Applicant Starto is an entertainment company headquartered in Japan, specializing in managing music artists, actors and other entertainment professionals. Declaration of Hiroyuki Nakajima ("Nakajima Decl.") ¶¶ 1 & 9. Meta is believed to own and operate Instagram, a social media app and website. Nakajima Decl. ¶¶ 4 & 7 & Ex. 1 thereto.

Applicant Sho Sakurai is one of Starto's artists under management. Nakajima Decl. ¶ 10. He is a Japanese singer, songwriter, ractor, news anchor, former radio host, and a member of the Japanese idol group "Arashi." *Id*.

Sho Sakurai's father, Shun Sakurai, is Japan's former vice-minister of the Ministry of Internal Affairs and Communications. Nakajima Decl. ¶ 11. After working for the Japanese government at the Ministry of Internal Affairs and Communications, Shun Sakurai was recruited in January 2020 by the Dentsu Group (now Dentsu Group Inc.) to help build their compliance system. *Id.* He fully retired from Dentsu Group Inc. in March 2022. *Id.*

On or about January 31, 2025, an anonymous person (the "Anonymous Individual") used an Instagram account to post a video with false and defamatory content about both Sho and Shun Sakurai. *Id.* ¶¶ 4 & 12. The Instagram account, "skm0911" (available at https://www.instagram.com/skm0911/?g=5), posted the offending video (the "Video") (available at https://www.instagram.com/reel/DFe-

ksjhteY/?igsh=MTFlcm13Z3djYjNjdg%3D%3D), which contains images of both Sho and Shun Sakurai and makes numerous false and defamatory statements. *Id.* ¶ 12.

Much of the content of the video is false and defamatory statements about Shun Sakurai, although images of Sho Sakurai also feature prominently in the Video. For example, text from the Video reads: "Spread the word! Dentsu's 100 million yen Covid fraud lol." Nakajima Decl. ¶ 14, Ex. 2 p. 1. The Video also overlays the words, "Dentsu makes a 100 million yen COVID fraud, while amakudari uncle profits immensely!!" over unauthorized images of Sho Sakurai and his father Shin Sakurai. *Id.* ¶ 16, Ex. 2 p. 7.

"*Amakudari*," is a Japanese term that translates to "descent from heaven." Nakajima Decl. ¶ 17. It refers to the practice of retired government officials taking positions in private companies or affiliated organizations after leaving public service. *Id.* This practice is controversial as it often raises concerns about conflicts of interest and the transparency of government operations. *Id.* An equivalent term used in American politics might be the "revolving door" phenomenon. *Id.*

Through the Video, the Anonymous Individuals accuse Sho Sakurai's father of corruption, fraud and conflicts of interest. The Video claims that "the head of the Ministry of Internal Affairs and Communications, which is supposed to regulate the media, is excessively using media interests at his *amakudari* position to make a significant amount of pocket money." Nakajima Decl. ¶ 18, Ex. 2, p.4. The Video also states, "the person who engaged in amakudari to Dentsu, which siphons off taxpayer money from the citizens, is Toshi Sakurai, the father of Johnny's Sakurai," referring to both Sho and Shun Sakurai. *Id.* ¶ 18, Ex. 2, pages 2-3.

Referring to the alleged "100 million yen Covid fraud" the Video asserts, "when it comes to such a large amount, it is a company-wide fraud under the direction of the parent company Dentsu." *Id.* ¶ 18, Ex. 2, p.2. The fraud referenced in the Video is a publicly reported finding that "DENTSU TEC INC." (actually, a company formerly known as TECH CO., currently known as DENTSU PROMOTION PLUS INC.), a subsidiary of Dentsu Group Inc., engaged in fraudulent billing practices. *Id.* ¶ 21.

*Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782

There is no evidence that Dentsu Group Inc., where Shun Sakurai worked, was implicated in the fraudulent activities of "DENTSU TEC INC." *Id.* There is no evidence that Shun Sakurai engaged in amakudari, was involved in any fraudulent billing, or took any illegitimate profits from his position with the Dentsu Group Inc. *Id.* ¶ 22.

Sho Sakurai is not involved with Dentsu Group Inc., its group companies, or any alleged fraud. Nakajima Decl. ¶ 24. Despite this, his face photograph is prominently featured without authorization in the video's opening and its promotional thumbnail. *Id.*

## II. CONTEMPLATED LITIGATION IN JAPAN

According to Applicants' counsel in Japan, due to its false and defamatory content, the Video posted by the Anonymous Individuals infringed upon the Applicants' rights in ways that are actionable under Japanese law. Nakajima Decl. ¶¶ 25-27. Specifically, the Video gives viewers the false impression that Shun Sakurai engaged in *amakudari* from his former government ministry, has conducted fraudulent billing by leveraging his past experiences, and has pocketed substantial amounts of illicit profit. *Id.* ¶ 25.

Likewise, in this context, the Video's prominent inclusion of Sho Sakurai's famous face at the start conveys the impression that he has an antisocial individual in his family, which diminishes Sho Sakurai's social reputation. *Id.* ¶ 26. The inclusion of his likeness in the Video constitutes defamation. *Id.* The Video infringes Mr. Sakurai's rights to honor, likeness, and publicity, and also infringes Applicant Starto's business rights in the reputation of their talent, Sho Sakurai, as a public figure under their management. *Id.*

Applicants intend to file civil lawsuits in Japan against the Anonymous Individual under Article 709 of the Civil Code of Japan for damages from the Anonymous Individual's infringement Sho Sakurai's rights to honor, likeness, and publicity, and also Applicant Starto's business rights in the reputation of their talent. Nakajima Decl. ¶¶ 8 & 26. Based on the facts collected, the civil lawsuit that will be filed upon discovering the identity of the Anonymous Individual will withstand a motion to dismiss in a civil court of Japan. *Id.* ¶ 29. Applicants therefore seek Court authorization to conduct limited discovery by serving a subpoena upon Meta, which is located in this district, to discover personal

identifying information ("PII") that can be used to identify the true identity of the Anonymous Individual. *Id.* ¶¶ 31-33.

## II. *EX PARTE* CONSIDERATION OF SECTION 1782 APPLICATION IS PROPER

Applications made under 28 U.S.C. § 1782 are typically considered on an *ex parte* basis, because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GmbH & Co, KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014). Consequently, orders granting Section 1782 applications typically only provide that discovery is "authorized," and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*. *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

### III. LEGAL STANDARD

Section 1782 permits authorization of discovery where three requirements are satisfied: (1) the person from whom the discovery is sought "resides or is found" in the district of the court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal . . . ."; and (3) the application is made by a foreign or international tribunal or "any interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019); 28 U.S.C. § 1782(a).

The Supreme Court in *Intel* identified four discretionary factors to be considered by a court when exercising its discretion to authorize discovery pursuant to Section 1782: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or

burdensome. *In re* Premises Located *at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (cleaned up) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

The party seeking discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous proceeding here. See *Intel*, 542 U.S. at 247, 261-63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist" in the United States. *Id.* at 244. Further, production of documents or testimony may be ordered for use in a foreign legal proceeding under Section 1782 as long as the disclosure would not violate a legal privilege. *Id.* at 249.

A district court's discretion is guided by the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to U.S. courts. *In re Ex Parte Application of Med. Inc. Ass'n Smile Create*, No. 19-mc-80230-VKD, 2019 WL 4933582, at *2 (N.D. Cal. Oct. 7, 2019) (citing *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d Cir. 2004)).

## IV. ARGUMENT

### 1. This Application Satisfies the Three Requirements of Section 1782

#### A. Meta "resides or is found" in this district

The first requirement is met. Meta "resides or is found" in this district as its principal office is in Menlo Park, California, in this district. Nakajima Decl. ¶ 7 & Ex. 1 thereto. See <u>In re Todo</u>, No. 5:22-MC-80248-EJD, 2022 WL 4775893, at *2 (N.D. Cal. Sept. 30, 2022); *see also In re Super Vitaminas, S.A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (finding that an office within the district satisfies the requirement); *In re TPK Touch Sols. (Xiamen) Inc.*, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (finding subpoenaed party was "found" within the district because it maintained an in-district office). Courts have also concluded that companies are found in a district where

*Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782

"they conduct systematic and continuous local activities in this district." *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036–38 (N.D. Cal. 2016).

### B. The civil action in Japan is within reasonable contemplation

To meet the second requirement, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Intel*, 542 U.S. at 259. All that is required by the statute is that a "future proceeding is within reasonable contemplation." *Id.* (holding that discovery was proper under Section 1782 even though the applicant's complaint was still only in the investigative stage).

The second requirement is met, because the discovery sought is for purposes of civil lawsuits to be filed in Japan. Nakajima Decl. ¶¶ 32-33. Civil lawsuits in Japan are "within reasonable contemplation" because Applicants intend to file the civil lawsuits once the true identities of the Anonymous Individuals are ascertained. *Id.* ¶¶ 8 & 33.

### C. The Applicant, as a putative plaintiff, is an interested person

The third and final requirement is met, because Applicants, as putative plaintiffs, are interested persons. *Id.* ¶¶ 26-27; see *Intel*, 542 U.S. at 256 (litigants are most common example of interested person).

## 2. The Supreme Court's *Intel* Factors Strongly Favor Granting the Application

The four discretionary *Intel* factors weigh in favor granting Applicants' request.

### A. Meta is not a party in the foreign proceedings

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Under this factor, "the key issue is whether the material is obtainable through the foreign proceeding." *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016). This is so, because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid" *Intel*, 542 U.S. at 264. Meta will be a nonparticipant in the civil action in Japan. Nakajima Decl. ¶ 33.

*Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782

Furthermore, it is located in this district. *Id.* ¶ 7 & Ex. 1 thereto. For the foregoing reasons, they are outside Japan's jurisdictional reach, and hence, evidence available in the United States from them is unobtainable by Applicants absent Section 1782(a). *Id.* ¶ 33; *see Intel*, 542 U.S. at 264. Therefore, this first factor weighs in favor of authorizing discovery.

### B.  Japanese courts are receptive to U.S. federal court judicial assistance

The second *Intel* factor requires the Court to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *4. Under this factor, "courts look for authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782." *In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016). In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, courts tend to err on the side of permitting discovery. *See Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) (citation omitted). In the absence of evidence that a foreign court would object to the discovery of the information sought in the subpoena, or that a foreign court objects more generally to the judicial assistance of U.S. federal courts, this factor weighs in favor of authorizing discovery. See, e.g., *In re Med. Corp. H&S*, No. 19-mc-80058-VKD, 2019 WL 1230440, at *3 (N.D. Cal. Mar. 15, 2019).

There are no known restrictions imposed by or any policies under the laws of Japan limiting U.S. federal court judicial assistance, and courts of Japan are receptive to assistance in discovery by U.S. federal courts, including for discovery of PII of individuals acting anonymously online. Nakajima Decl. ¶¶ 33-35. Furthermore, this Court in the past has granted Section 1782 discovery for use in proceedings in Japan. *See, e.g.*, *In re Med. Corp. H&S*, 2019 WL 1230440; *In re Med.Corp. Seishinkai*, No. 21-mc-80160-SVK, 2021 WL 3514072 (N.D. Cal. Aug. 10, 2021).

Because there is evidence showing that courts of Japan are receptive to U.S. federal court judicial assistance, and there is nothing to show that courts of Japan would object to discovery of the information sought by this Application, this factor weighs in favor of authorizing discovery.

### C. This Is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions

The third *Intel* factor is whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014); *see also In re Eurasian Natural Resources Corp.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018) (third *Intel* factor weighs in favor of discovery where there is "no evidence" of an attempt to circumvent foreign proof gathering restrictions or policies). Applicants are not attempting to circumvent any foreign proof-gathering restrictions or other policies of Japan or the United States. Nakajima Decl. ¶ 36. Nothing suggests that Applicants are attempting to circumvent foreign proof-gathering restrictions or applicable polices, so this factor weighs in favor of authorizing discovery.

### D. The discovery requested is narrowly tailored, limited in scope, and relevant

The fourth *Intel* factor is whether "the discovery requested is unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad "fishing expedition" for irrelevant information. *In re Ex Parte Applicate of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). The discovery sought here is narrowly tailored to seek only sufficient information to identify the Anonymous Individuals, and is not unduly intrusive or burdensome, because Applicants seek discovery of only PII such

as names, addresses, telephone numbers, and e-mail addresses, or information that will lead to the discovery of PII such as access logs for limited periods of time, which information is stored by Meta in the ordinary course of their business. Nakajima Decl. ¶¶ 37-38; *see In re Frontier Co., Ltd.*, No. 19-mc-80184-LB, 2019 WL 3345348, at *5 (N.D. Cal. July 25, 2019) (granting a Section 1782 request to issue a subpoena for the name, address, email address, telephone number, and name and address on credit cards); *In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *4-5 (authorizing similar discovery).

As for the access logs, discovery of the IP address and the corresponding port number and date and time that the IP address was used (commonly known as a timestamp) is reasonable and necessary because IP addresses and port numbers are assigned by an internet service provider (the "ISP") when a user accesses the internet. Nakajima Decl. ¶ 40. Because of this, different people may be using the same IP address at different points-in-time. *Id.* Therefore, without both the IP address and the corresponding timestamp, a Japanese court will be unable to order an ISP to disclose PII of the tortfeasor, because it will be unclear which of the users of the subject IP address used the IP address at a specific point-in-time. *Id.* The IP address, port number and timestamp are all necessary for a Japanese court to order an ISP to disclose PII sufficient to identify the Anonymous Individual, and for the ISP to pinpoint the relevant person using that information. *Id.*[1]

For the foregoing reasons, this factor also weighs in favor of authorizing discovery.

## V. CONCLUSION

Applicants have met each of the requirements of Section 1782, and all of the discretionary *Intel* factors weigh in favor of authorizing discovery. In light of the twin aims of Section 1782 to provide efficient assistance to foreign litigants and to encourage

---

[1] Additionally, the subpoenas comply with the Stored Communications Act, 18 U.S.C. § 2701 et seq., because they do not seek the contents of communications from the accounts See, e.g., *Optiver Australia Pty. Ltd. v. Tibra Trading Pty. Ltd.*, No. C 12-80242, 2013 WL 256771 (N.D. Cal. Jan. 23, 2013) (discussing prohibitions of the Stored Communications Act).

foreign countries by example, this Court should exercise its discretion to authorize limited discovery from Meta, so that Applicants can identify the Anonymous Individual and file civil lawsuits in Japan.

Dated: May 27, 2025                    Gamma Law, P.C.
                                                        Duy Thai
                                                        Marco Martemucci

                                                By:  /s/Marco Martemucci
                                                        Marco Martemucci
                                                        Attorneys for Applicants
                                                        Starto Entertainment, Inc. and Sho Sakurai